**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HORSEPOWER ELECTRIC AND MAINTENANCE CORP.<br><br>                        Plaintiff,<br><br>              v.<br><br>NATIONAL LABOR RELATIONS BOARD, an agency of the United States; and TERESA POOR, in her capacity as Regional Director of Region 29 of the National Labor Relations Board<br><br>                        Defendants. | **COMPLAINT**<br><br>Case No. _____ |

Plaintiff HORSEPOWER ELECTRIC AND MAINTENANCE CORP. ("Horsepower") for its complaint against defendants NATIONAL LABOR RELATIONS BOARD ("NLRB") and TERESA POOR (the "Regional Director"), alleges as follows:

## INTRODUCTION

1. This action seeks to require Region 29 of the NLRB to adhere to the NLRB's own Rules and Regulations and to comport with basic considerations of due process. Horsepower must resort to bringing this Complaint because Region 29 has unfairly delayed processing an election to determine whether a bargaining unit of Horsepower's employees continue to be represented by the United Electrical Workers Union, Local 363, IUJAT (the "Union"). Emergency relief in the form of an injunction, writ of mandamus, or other order is necessary because each day Region 29 continues to delay (in addition to the months of delay that have already occurred) prejudices Horsepower's interests while delaying, if not outright denying, Horsepower's employees their legal entitlements to a free and fair decertification election under the National Labor Relations Act ("NLRA").

2. Towards the end of 2022, one of Horsepower's bargaining unit employees filed a petition to hold a decertification election. Just prior to the petition, the Union filed an unfair labor practice proceeding with designs on disrupting the decertification election. By disrupting the decertification election, the Union could avoid employees exercising their choice to no longer be represented by the Union.

3. Region 29 used this unfair labor practice proceeding as justification for impounding and refusing to count the ballots in the decertification election pending the outcome of the unfair labor practice proceeding.

4. But in a perverse twist, Region 29 has also **refused** to proceed with the unfair labor practice proceeding and set a date for a hearing to allow Horsepower to defend itself from the Union and the NLRB's allegations of wrongdoing. Horsepower is ready, willing, and able to defend itself and confident that the Union and the NLRB's allegations are meritless, but the NLRB is simply denying Horsepower that opportunity.

5. This has left the decertification election in never-ending purgatory – Region 29 will refuse to count the ballots until the unfair labor practice is resolved in favor of Horsepower, but Region 29 is also refusing to proceed with the case.

6. Horsepower is thus powerless to ever obtain the results of the decertification election, and is legally obligated to recognize and bargain with the Union when it is unknown whether Horsepower's employees even want the Union to represent them. Indeed, numerous employees have complained to Horsepower management that they voted in a decertification election and the NLRB is refusing to count their votes. Region 29's actions have had the effect of trampling on the rights of Horsepower's employees under the NLRA to freely choose whether they want to be represented by the Union.

7. In fact, upon information and belief, Region 29's delay is being undertaken for the bad faith purpose of keeping the ballots impounded for as long as possible so the Union cannot be decertified as the collective bargaining representative of the bargaining unit employees. Region 29 has set forth nonsensical and contradictory reasons for its delay that demonstrate bad faith in its actions.

8. Moreover, Region 29 has refused to proceed with the unfair labor practice case and set a date for the hearing despite the fact that the NLRB's Rules and Regulations expressly require that an unfair labor practice complaint and notice of hearing set a specific hearing date when the complaint is issued.

9. Accordingly, Horsepower respectfully requests that this Court grant Horsepower's requested relief and put a stop to Region 29's actions that: (1) are directly contradictory to the NLRB's Rules and Regulations; and (2) that violate Horsepower's Constitutional right to due process.

## PARTIES

10. Plaintiff Horsepower is a corporation organized under the laws of the State of New York. Its principal office is located at 4101 1st Avenue Brooklyn, NY 11232. Horsepower is an electrical contractor performing work in the tri-state area, primarily on high rise construction projects in and around New York City.

11. Defendant NLRB is an agency of the United States established by Congress pursuant to the NLRA.

12. Defendant Pool is the Regional Director of Region 29 of the NLRB. Region 29 is one of a number of regional offices under the purview of the NLRB's General Counsel, and is

responsible for, among other related tasks, conducting elections and investigating unfair labor practice charges within Brooklyn, Queens, Staten Island, Suffolk County, and Nassau County.

## JURISDICTION AND VENUE

13. This case arises under the Fifth Amendment to the Constitution and the laws of the United States (specifically, the NLRA). Accordingly, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1361, and/or 1651.

14. The claims in this case are ripe for District Court jurisdiction because, without it, there would be no possibility of meaningful (or any) judicial review. The NLRA allows for Court of Appeals review of a final order of the NLRB, but, in this case, the unlawful action by the NLRB is that it will not process the decertification election or the unfair labor practice proceeding, precluding Horsepower from ever obtaining a final order from the NLRB. Moreover, the allegations here that the NLRB is not following its Rules and Regulations and is violating Horsepower's Constitutional due process rights are wholly collateral to the NLRA's statutory-review scheme. Lastly, the allegations here – involving interpretation of Federal regulations and the Constitution – are outside the NLRB's expertise, which is in labor relations and substantive labor law. *See Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023).

15. The NLRB's actions in this case also fall within the principles for District Court jurisdiction over NLRA disputes outlined by the United States Supreme Court in *Leedom v. Kyne*, 358 U.S. 184 (1958) (the NLRB has acted in a manner clearly contrary to its statutory direction) and by the Second Circuit in *Fay v. Douds*, 172 F.2d 720 (2d Cir. 1949) (the NLRB has committed a violation of Horsepower's constitutional rights), and their progeny.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Horsepower maintains its principal place of business in this District.

## FACTUAL ALLEGATIONS

1. Bargaining with the Union

17. In 2015, Horsepower recognized the United Electrical Workers Union, Local 363, IUJAT (the "Union") as the bargaining representative of a bargaining unit of employees and entered into a collective bargaining agreement with the Union effective August 1, 2015 through July 31, 2018 (the "2015 CBA"). At all relevant times, the represented employees are a unit of non-supervisory electrical workers.

18. On or about September 1, 2017, Horsepower entered into an MOA with the Union and the Building Industry Electrical Contractors Association (the "Association" or "BIECA"), a multi-employer bargaining association in the electrical subcontracting industry. Per the MOA, Horsepower agreed to become a member of the Association and to adopt and become signatory to the collective bargaining agreement between the Association and the Union effective July 1, 2016 through November 30, 2019 (the "2016 BIECA CBA").

19. Upon the expiration of the 2016 BIECA CBA, the Association negotiated a successor collective bargaining agreement with the Union, which ran from December 1, 2019, through November 30, 2022 (the "2019 BIECA CBA"). Because Horsepower was still a member of the Association, it became bound to the 2019 BIECA CBA. The 2019 BIECA CBA renewed year to year after its expiration, unless either party gave written notice to the other party at least sixty (60) days prior to the expiration of the party's desire to modify or amend and/or re-negotiate the agreement.

20. On July 6, 2022, Horsepower gave the Association timely written notice that it was resigning its membership effective at the expiration of the 2019 BIECA CBA on November 30, 2022. Via letter dated September 21, 2022, Horsepower gave timely notice to the Union that it would not be renewing the 2019 BIECA CBA upon its expiration.

21. Subsequent to the expiration of the 2019 BIECA CBA, Horsepower and the Union engaged in bargaining for a successor collective bargaining agreement, culminating in the parties' reaching an agreement and Horsepower executing the agreement on July 27, 2023. The Union has represented that they will likewise sign the agreement and seek ratification of the agreement. The agreement states that the Union will remain as the collective bargaining representative of the bargaining unit pending the outcome of the Decertification Case discussed below.

2. <u>Decertification Election in Case No. 29-RD-309689</u>

22. On or about December 19, 2022, one of Horsepower's employees in the bargaining unit represented by the Union – Shloime Spira ("Spira" or "Petitioner") filed a decertification petition with Region 29 of the NLRB in Case No. 29-RD-309689 seeking an election to have the Union decertified as the collective bargaining representative of the bargaining unit of Horsepower's employees represented by the Union (the "Decertification Case"). The petition was re-filed and/or re-docketed on January 11, 2023.

23. On February 14, 2023, the Regional Director approved a Stipulated Election Agreement entered into between Horsepower, the Petitioner, and the Union setting forth the terms of the decertification election. Among other items, the Stipulated Election Agreement set the date (March 9, 2023), time, and location of the election, and other preliminary and logistical matters. Additionally, the Stipulated Election Agreement stated that "Upon conclusion of the election, the

ballots will be counted and a tally of ballots prepared and immediately made available to the parties."

24. The election was held pursuant to the terms of the Stipulated Election Agreement on March 9, 2023. At the election, the Union designated its own employee as observer.

25. On the day of the election, the Board agent responsible for the election, at the direction of the Regional Director, impounded the ballots pending the outcome of the unfair labor practice case bearing Case No. 29-CA-308104 (discussed further below) pursuant to Section 103.20 of the NLRB's Rules and Regulations (29 CFR § 103.20) ("Election procedures and blocking charges"), and so informed the parties.

26. 29 CFR § 103.20(c) states, in relevant part: "If charges are filed that allege violations of section 8(a)(1)…of the Act and that challenge the circumstances surrounding the petition or the showing of interest submitted in support of the petition,…the regional director shall impound the ballots for up to 60 days from the conclusion of the election if the charge has not been withdrawn or dismissed prior to the conclusion of the election. If a complaint issues with respect to the charge at any point prior to the expiration of that 60-day post-election period, then the ballots shall continue to be impounded until there is a final determination regarding the charge and its effect, if any, on the election petition. If the charge is withdrawn or dismissed at any time during the 60-day period, or if the 60-day period ends without a complaint issuing, then the ballots shall be promptly opened and counted.

3. Unfair Labor Practice Proceedings in Case No. 29-CA-308104

27. The Union filed an unfair labor practice charge with Region 29 of the NLRB on or about November 29, 2022, which was assigned Case No. 29-CA-308104.

28. The Union filed a first amended charge in this case with Region 29 on or about December 8, 2022.

29. The Union filed a second amended charge in this case with Region 29 on or about February 9, 2023, removing certain allegations previously made.

30. The union filed a third amended charge in this case with Region 29 on or about February 28, 2023, adding more specifics regarding the allegations.

31. On March 30, 2023, Horsepower received a letter from Region 29 informing Horsepower that Region 29 had approved withdrawal of one of the allegations in the previous charges. Upon information and belief, the Union's withdrawal of this allegation was solicited by Region 29 because Region 29 had found the allegation to be meritless.

32. The union filed a fourth amended charge in this case with Region 29 on or about May 5, 2023, removing certain allegations and adding an additional allegation.

33. Region 29 of the NLRB issued a Complaint and Notice of Hearing (the "Complaint") in this case on or about May 8, 2023, sixty (60) days after the date of the March 9, 2023 election. The substantive allegations contained in the Complaint were identical to those contained in the fourth amended charge. The Notice of Hearing did not notice a date for the hearing, stating: "PLEASE TAKE NOTICE THAT on a date yet to be determined, at 9:30 am, and on consecutive days thereafter, until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board via video conference or at a hearing room located at Region 29 of the NLRB, Two MetroTech Center, 5th Floor, Brooklyn, New York the manner and location of the hearing to be determined and Ordered by the Administrative Law Judge."

34. However, Section 102.15 of the NLRB's Rules and Regulations (29 CFR § 102.15) ("When and by whom issued; contents; service") states: "After a charge has been filed, if it appears to the Regional Director that formal proceedings may be instituted, the Director will issue and serve on all parties a formal complaint in the Board's name stating the alleged unfair labor practices and containing a Notice of Hearing before an Administrative Law Judge at a fixed place and **<u>at a time not less than 14 days after the service of the complaint</u>**."  (Emphasis added).

35. On May 22, 2023, Horsepower filed an answer to the Complaint denying any wrongdoing.

    4. <u>Region 29 Refuses to Schedule and Proceed With the Unfair Labor Practice Proceeding</u>

36. On May 19, 2023, counsel for Horsepower contacted via email the attorneys with Region 29 handling the matter (as well as the Union's attorney) to discuss scheduling a hearing. The Region 29 supervising attorney (Kate Anderson) informed Horsepower's counsel that she would check with the Regional Director and Regional Attorney and get back to Horsepower, but that final scheduling would have to wait until the Region 29 attorney primarily litigating the matter (Annie Hsu) returned from vacation on June 5, 2023.  In order to expedite the process, Horsepower's counsel provided dates that he knew would not work for a hearing, but Region 29 did not respond.

37. On June 5, 2023, Horsepower's counsel again reached out to Region 29 to discuss scheduling.  Ms. Hsu, having returned from vacation, responded that she would check with the Regional Director and respond.  However, only four (4) minutes later, Ms. Hsu then responded that the Region was apparently "still investigating other issues, which may be consolidated with this case," and "[o]nce that is resolved, we will figure out Hearing dates."  Horsepower's counsel pressed Ms. Hsu for further detail, as Horsepower had not received another charge or amendment

to the charge in this case since the fourth amended charge and the filing of the Complaint, nor had Region 29 raised any other issue or allegation other than those raised in the fourth amended charge and the Complaint.

38. Ms. Hsu refused to provide any detail, answering in a perfunctory and suspect manner that the Region "will let [Horsepower] know if/when a new charged is filed, and if there is sufficient evidence to solicit [Horsepower's] position." Ms. Hsu refused to even let Horsepower's Counsel know whether these supposed "other issues" related to conduct alleged to have interfered with the decertification petition, which is the entire subject of this case. Ms. Hsu simply stated that she "will give [Horsepower] more details when [she is] ready to so," merely allowing that the Region "hope[s] to solicit further evidence from [Horsepower] in the next month." These email communications took place on June 5 and 6, 2023. The email communications from May 19, 2023, through June 6, 2023, are attached hereto as Exhibit A.

39. On June 20, 2023, Horsepower filed with the NLRB Division of Judges a motion to reschedule the hearing (the "Motion to Reschedule"), arguing that Section 102.15 of the NLRB's Rules and Regulations requires the Complaint and Notice of Hearing to set an actual hearing date, which Region 29 did not do in this case. Instead, Region 29 was refusing to process the case and holding the case in abeyance for an indefinite period of time. Moreover, Region 29 was prejudicing Horsepower and its employees by impounding the ballots in the Decertification Case pending the outcome of this case, but refusing to allow this case to move forward. Accordingly, Horsepower argued that the Division of Judges – which has the power to reschedule hearings pursuant to Section 102.16(b) of the NLRB's Rules and Regulations – should reschedule the hearing to an actual, set time, as required by Section 102.15. Horsepower's Motion to Reschedule is attached hereto as Exhibit B.

40. Section 102.24(a) of the NLRB's Rules and Regulations require that oppositions to motions be filed "promptly." However, over a month has passed since Horsepower's Motion to Reschedule and Region 29 has not filed an opposition. Nor has the NLRB's Division of Judges ruled on Horsepower's Motion to Reschedule.

41. Two (2) days after Horsepower filed its Motion to Reschedule, on June 22, 2023, having had its conduct called into question, Ms. Hsu emailed Horsepower's counsel that "no new charge will be solicited, and Regional Management is currently working on assigning a litigating attorney to the case and setting a hearing date." Horsepower's counsel responded that day to Ms. Hsu to have the litigating attorney reach out to him as soon as possible. Shortly thereafter, Ms. Hsu updated Horsepower's counsel that the "Regional attorney is still considering whether to solicit a new charge. However, meanwhile, the Region is currently working on assigning a litigating attorney to the case and setting a hearing date."

42. On June 28, 2023, having not heard anything from the Region, Horsepower's counsel emailed Ms. Hsu for an update. Ms. Hsu stated that she'll "ask the Regional Attorney and get back to you."

43. On July 7, 2023, having **still** not heard anything from the Region, Horsepower's counsel emailed Ms. Hsu yet again for an update on the status of the Region's search for a litigating attorney to handle the case. In addition, Horsepower's counsel stated to Ms. Hsu that the Region's actions in this case were clearly taken in bad faith with a design to delay the case that the votes in the Decertification Case would stay impounded and the Union could stay certified without Horsepower being able to defend itself from the Union's allegations. Horsepower also pointed out to Ms. Hsu that it was not unreasonable for Horsepower to be given the chance to defend itself before an Administrative Law Judge and for a hearing to be set, and that Horsepower's employees

were especially affected because they had exercised their rights under the NLRA to cast a vote and have their voices heard, but Region 29 was doing everything in its power to keep those votes from being counted. Ms. Hsu respond simply that she would "pass this along to the Regional Attorney, who is handling assigning the case."

44. On July 20, 2023, Ms. Hsu emailed Horsepower's counsel that the "Region is very actively working on assigning the trial to a Board attorney and getting a trial date as soon as possible." The email communications from June 22, 2023, through July 20, 2023, are attached hereto as Exhibit C.

45. However, despite the Region's supposed "very active" efforts to assign a litigating attorney to the case, a hearing still has not been set nearly three (3) months since the Complaint was filed, over two (2) months since Horsepower's counsel reached out to Region 29 to try to work with it to set a hearing date, and over one (1) month since Region 29 informed Horsepower's counsel that Region 29 would set a hearing date. As far as Horsepower is aware, Region 29 has not even assigned a litigating attorney to the case. Moreover, despite Ms. Hsu stating on June 5, 2023, that Region 29 would hope to solicit evidence from Horsepower on the supposed other issue within the next month, Region 29 has yet to do so nearly two (2) months later.

46. Upon information and belief, Region 29 has acted in bad faith and with the purpose of delaying a hearing in Case No. 29-CA-308104 so that the ballots in the Decertification Case stay impounded for as long as possible and the Union cannot be decertified as the collective bargaining representative of the bargaining unit employees. Indeed, no objective view of Region 29's actions in this case would find them reasonable or in good faith.

## COUNT I
## (NLRB Has Acted in a Manner Clearly Contrary to its Statutory Direction)

47. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 46, as if fully set forth herein.

48. Section 102.15 of the NLRB's Rules and Regulations (29 CFR § 102.15) requires that when the Regional Director issues a complaint in an unfair labor practice proceeding, the complaint contain a Notice of Hearing that sets the hearing for a specific time (not less than 14 days after service of the complaint).

49. When Region 29 issued the complaint in Case No. 29-CA-308104 on May 8, 2023, the Notice of Hearing did not set a hearing date contrary to the NLRB's Rules and Regulations. Instead, it set the hearing "on a date yet to be determined."

50. Subsequent to issuing the complaint in Case No 29-CA-308104, Region 29 has continued to fail to set a hearing date.

51. Region 29 has continued to impound the ballots in the Decertification Case pending the outcome of Case No. 29-CA-308104, despite failing to proceed with the case in direct violation of the NLRB's Rules and Regulations.

52. By Region 29's actions in direct contravention of the NLRB's Rules and Regulations, Region 29 has caused Horsepower to suffer immediate and irreparable harm by the NLRB refusing to count the ballots in the Decertification Case – and thus legally obligating Horsepower to continue to recognize and bargain with the Union – pending the outcome of Case No. 29-CA-308104, which the Region 29 is refusing and/or failing to proceed with.

## COUNT II
### (NLRB has violated Horsepower's Due Process Rights)

53. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 52, as if fully set forth herein.

54. Region 29 has impounded the ballots in the Decertification Case pending the outcome of Case No. 29-CA-308104, but refuses to proceed with the Case No. 29-CA-308104 and allow Horsepower to defend itself from the allegations.

55. Accordingly, Region 29 has put Horsepower in the position where it is powerless to ever defend itself from the allegations causing the ballots in the Decertification Case to be impounded.

56. Region 29's actions have been in bad faith and with the purpose of delaying a hearing in Case No. 29-CA-308104 so that the ballots in the Decertification Case stay impounded for as long as possible and the Union cannot be decertified as the collective bargaining representative of the bargaining unit employees.

57. Even if Region 29's actions have not been in bad faith, it has nonetheless excessively delayed the hearing in Case No. 29-CA-308104.

58. Excessive delay by the NLRB can result in prejudice to Horsepower just as effectively as if the issues raised in Case No. 29-CA-308104 were resolved against Horsepower on the merits.

59. By these actions taken by Region 29, Region 29 has violated Horsepower's due process rights and caused Horsepower to suffer immediate and irreparable harm by the NLRB refusing to count the ballots in the Decertification Case – and thus legally obligating Horsepower to continue to recognize and bargain with the Union – pending the outcome of Case No. 29-CA-308104, which the Region 29 is refusing and/or failing to proceed with.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Horsepower respectfully requests that this Court enter judgment in its favor and against Defendants:

A. Issuing a preliminary injunction (later to be made a permanent injunction) or other emergency order or writ against Region 29 enjoining or stopping it from continuing to impound the ballots in the Decertification Case (or otherwise issuing an order requiring the ballots in the Decertification Case to be counted);

B. Alternatively, issuing a preliminary injunction (later to be made a permanent injunction) or other emergency or writ against Region 29 requiring it to set a hearing date in Case No. 29-CA-308104 and otherwise proceed with the case without any further delay;

C. Awarding Horsepower its reasonable costs and attorneys' fees incurred in bringing this action, if applicable; and

D. Awarding such other and further relief the Court deems just and proper.

Dated:  July 28, 2023
         New York, New York

FISHER & PHILLIPS LLP

By: *s/ Seth D. Kaufman*
    Seth D. Kaufman
    Times Square Tower
    7 Times Square, Suite 4300
    New York, NY 10036
    Tel.: (212) 899-9975
    Fax: (212) 956-1971
    skaufman@fisherphillips.com

*Attorneys for Plaintiff Horsepower Electric and Maintenance Corp.*